## Case No. 3,043.

### The COLUMBUS.

[1 Abb. Adm. 384.][1]

District Court, S. D. New York. Dec. 22, 1848.

COLLISION—DUTY OF FERRY-BOAT—PROOF BY LIBELLANT—EMERGENCY.

1. A ferry-boat plying across a navigable river is bound to remain in her slip, notwithstanding her appointed time of departure has arrived, if any vessel is seen or is in a position to be seen from on board her, with which she will be in danger of coming in collision if she goes out. But she is not compelled to lie waiting the expected arrival of another vessel.

---

[1] [Reported by Abbott Brothers.]

2. In order to prevail in an action for damages occasioned by a collision, more must be done by the libellant than to show his vessel clear of blame; he must make it manifest that the loss was occasioned by the fault of those in charge of the colliding vessel.

3. Where a vessel comes suddenly and without warning into imminent peril of a collision— e. g., where two vessels approaching are concealed from each other by intermediate objects until they are close upon each other,—the necessary uncertainty and confusion created by the surprise is to be taken into account in determining whether the management of the respective vessels is proper or blameworthy.

[Cited in Gilman v. The Tyler, Case No. 5,-446.]

In admiralty. This was a libel in rem, filed by the Hoboken Land and Improvement Company, owners of the steam ferry-boat Fairy Queen, against the steamboat Columbus, to recover damages for a collision between the two boats. The collision in question occurred in July, 1848, on the New York side of the river, off the slip of the Fairy Queen, then engaged in plying from New York City to Hoboken. The ferry-boat was so much injured that she sunk immediately. The pleadings upon each side imputed the accident to the negligence, want of precaution and culpable conduct of the other boat. The circumstances of the case are stated in the opinion.

Cambridge Livingston, for libellants.
H. B. Cowles, for claimants.

BETTS, District Judge. I am not satisfied, upon the proofs or arguments adduced by the claimants, that the libellants were guilty on the occasion of the collision of any misconduct or negligence which led to the disaster, or which ought to screen the claimants if a fault is established against their vessel. The Fairy Queen left her berth on the south side of the slip at the foot of Christopher-street, at half-past 4 p. m., that being the fixed time for her departure to perform her trip to the opposite landing at Hoboken. At this time, the Pioneer, another ferry-boat, run by the libellants, was lying to, out in the river, opposite the slip, prepared to enter as soon as it should be vacated by the Fairy Queen. Although the Pioneer was not the consort of the Fairy Queen upon the same ferry, yet the two boats were in the habit of occupying the New York slip alternately, each having a fixed period for leaving it, and usually coming into it also, at a known time. The Columbus, the steamer proceeded against, plied daily up and down the river, having regular places of stoppage at docks above and below and in the vicinity of the landing and starting-place of the Fairy Queen; and her stated time of passing that point was half-past 4 p. m.

The tide was ebb and nearly at low water. The Fairy Queen was a small low boat, and was thus, at the time in question, brought so far down below the surface of the pier that vessels north of it and near the docks could not be seen from on board her until she moved outside the wharves. The wind was northwest, and the Fairy Queen came out of her berth, heading N. W., in order to pass astern of the Pioneer, and another vessel anchored nearly abreast of the pier, a distance of one hundred yards off. Immediately after leaving the pier, it was discovered upon the Fairy Queen that the Columbus was opening from Hammond-street pier above, about two hundred feet out from the docks, and was apparently coming directly upon the Fairy Queen. The engine of the latter boat was then immediately stopped and backed, and she receded a short distance towards the slip, with intent to get back into it; that being found impracticable, in order to lessen the peril of the collision, her engine was again reversed, and an attempt made to move ahead, when the stem of the Columbus struck and perforated the Fairy Queen, and caused her to sink immediately. The number of steam craft in this harbor, running in and out of its various slips at all hours, some at fixed times and others indefinitely, renders it important to the common safety of navigation along the wharves, that the law regulating their movements, in approaching and leaving the slips, should be well understood and strictly enforced. That consideration calls for a fuller notice of this case than its special difficulties would demand.

A steamer, although appointed to go out at fixed periods, is bound to remain in her slip, notwithstanding the time of her departure has arrived, if a vessel is seen, or is in a position to be seen outside, which she will be in danger of striking if got under way at the time. But she is not compelled to lie waiting the expected arrival of another vessel, whose period of return to the same point or known time of passing it is about to expire. The evidence goes no further here than to fix about the usual time the Columbus passed that point daily, and shows that a variance of ten or fifteen minutes in her arrivals was not unusual. It also proves that two minutes would be sufficient time to carry the Fairy Queen out of her way, after she reaches the place where she may be seen approaching.

The Columbus was not discovered in that interval of time on this occasion, because a vessel, loaded with hay, lying at the end of Charles-street pier, intercepted the view from the Fairy Queen in that direction. When the Columbus came out from behind that vessel, and the ferry-boat had passed out of her slip sufficiently far to bring the Columbus in sight, the two boats were found in such hazardous proximity, and the danger of collision was so imminent, as naturally to create uncertainty and confusion on board the ferry-boat, and in my opinion, the collision cannot rightfully be charged to any culpable misconduct of hers, if an hypothesis may be framed

upon which a different course would have freed her from the danger. She did what in the exigency seemed to offer a chance of rescue, and whether any thing else could in reality have better served to that end, must be only matter of conjecture.

The claimants have not, therefore, in my judgment, succeeded in protecting themselves, by showing that the collision was produced by any blamable omissions or acts of the Fairy Queen. But to throw upon the claimants the consequences of this disaster, more is incumbent upon the libellants than to prove themselves clear of blame;—they must make it manifest that the loss was occasioned by the fault of the Columbus. This steamboat made daily trips between New York and Sing Sing, landing both ways at Hammond-street dock, a distance of one thousand feet north of Christopher-street pier. The landing had that afternoon just been made, and she was under way towards her berth at Chambers-street, moving at a slow rate, about two hundred feet out from the docks. Two or three vessels were lying at anchor below Hammond-street, and one hundred yards or more from the docks. The steamboat Pioneer was running a few yards ahead of the Columbus, on her starboard side, and close outside of the anchored vessels. About opposite, or slightly above Christopher-street, and just astern of the vessel anchored lowest down, the Pioneer changed her course to come into the slip, when the engine of the Columbus was immediately stopped and reversed, and worked back with all its power till the collision occurred.

The witnesses differ in opinion as to the exact place the Columbus had reached when the collision took place. The pilot of the Pioneer thinks it was opposite Charles-street. The pilot and engineer of the Fairy Queen place her below Amos-street; whilst witnesses on the Columbus suppose her at Charles-street. or between that and Amos, or against the Amos-street cross-pier. No witness supports his estimate by any collateral fact which gives certainty to it. The differences in estimates may arise from looking at and from different parts of the Columbus, (she being one hundred and eighty feet long, and nearly or quite extending over the space between the two slips,) or from oblique ranges of vision, or from a few seconds difference of time in observing her, when the impetus given by the wind and tide would necessarily urge her forward with considerable rapidity. Either of these circumstances might reasonably account for the disagreements of the witnesses in this particular. The Columbus was managed in this respect solely with regard to the movements of the Pioneer, and to avoid coming in contact with her. The Fairy Queen was first noticed from the Columbus, after the order had been given to back the latter, and when the former was just showing herself beyond the end of the pier, and moving out of her slip.

Upon this evidence there is no ground for imputing blame to the Columbus, in the measures taken or omitted by her, after she and the Fairy Queen came in sight of each other. The measures she took in order to avoid the Pioneer were those which would have been demanded of her had she been acting in respect to the Fairy Queen, also, and for the supposed omission of which, her coming upon the latter is imputed to her as a fault. Nor is the Columbus chargeable with want of precaution in advancing so near to the Fairy Queen without discovering her. The reasons assigned by the libellants as an adequate excuse to the Fairy Queen for not discerning the Columbus, equally enure to the protection of the Columbus. The sloop lying between the two boats interposed the same obstacle to the view of each. The Columbus was not called upon to notice the position of the Fairy Queen, or her probable purposes, until she showed herself in motion; and it is clearly proved that did not occur until the engine of the Columbus was already reversed, and she was in the act of working back to avoid the Pioneer. This was the appropriate and only means in her power for protecting the Fairy Queen also. The Columbus was on a track safe for her to run, and the most prudent watchfulness would exact no more from her than to guard against vessels under way or lying at anchor outside the slips. She had a right to rely upon the presumption that her position and direction would be observed by any vessel desirous to get under way, and that such vessel would not put out to cross her track without being sure of sufficient distance and speed to render such movement safe. It would have been gross remissness in each boat to have pressed ahead in their relative nearness to each other, had no accidental impediments prevented their discerning those movements at the moment. The Fairy Queen would have been culpable in leaving her fastenings before the other was clear of her track, and the Columbus guilty in continuing her headway when it must have been dubious whether she had room to pass the ferry-boat safely.

Upon the testimony, I regard the collision as a pure casualty, so far as the agency of the Columbus was concerned, attributable to no fault or negligence on her part, and that she is, therefore, not liable to respond for the damages arising from it. The matter of costs is undoubtedly very much under the discretion of the court. Canter v. American Ins. Co., 3 Pet. [28 U. S.] 307; U. S. v. The Malek Adhel, 2 How. [43 U. S.] 210. The general principle is, as at law and in equity, that costs, in causes of damage, in this court, follow the decision. The Ebenezer, 7 Jur. 1117; The Athol, 1 W. Rob. Adm. 374. In cases of collision, however, the usage is to charge them upon the party most to blame. The Celt, 3 Hagg. Adm. 321. If neither party is found culpable, each pays his own costs. The Washington, 5 Jur. 1067. In the English

admiralty, where both vessels are to blame, it would seem that the costs are imposed on both in common. Id. No fault is fastened upon the Fairy Queen in this case, and accordingly each party must pay his own costs. Decree accordingly.